[No. 25748. Department One. August 6, 1935.]

THE STATE OF WASHINGTON, *Respondent,* v.
S. TAKESHIMA, *Appellant.*[1]

*J. L. Mitchell (Kahin & Carmody,* of counsel), for
appellant.

*Robert J. Willis, Lloyd L. Wiehl,* and *George W.
Wilkins,* for respondent.

[1]Reported in 47 P. (2d) 994.

638

BEALS, J.—The defendant, S. Takeshima, was charged by way of information with the crime of murder in the first degree, in that he, on or about December 30, 1934, with premeditation, shot one S. Nakao, and that, from the effect of the wounds so inflicted, Nakao died. The defendant pleaded not guilty, and on the trial admitted the shooting but claimed that he had acted in self-defense and that he had used no more force than was justified under the circumstances. The trial resulted in a verdict of guilty of murder in the second degree, and from judgment and sentence entered on this verdict, the defendant has appealed.

It appeared on the trial that, at about eight-thirty o'clock on the evening of December 30th, appellant and a friend were playing pool in a Japanese resort in the city of Wapato. Several other Japanese were present in the room, and, during the course of the game, S. Nakao entered the room, his conduct evidencing that he was, to some extent at least, under the influence of liquor. Appellant is a small man, while Nakao was much larger and heavier. Appellant testified that, shortly before the evening in question, he had caught Nakao cheating at cards, and that, as a result of his accusation of unfairness, Nakao had threatened to do appellant bodily violence, of which threats appellant had been advised; and that, because of Nakao's threats, appellant had armed himself with a revolver.

It clearly appears from the evidence that, when Nakao entered the room on the evening of the tragedy, he began abusing appellant, applying to him insulting epithets and inviting him to come outside and fight. Appellant attempted to placate Nakao, testifying that he reminded him that they were both married men and should not fight. Nakao then approached appellant and took from him the pool cue which appellant was holding. ·The Japanese who were present in the

pool room, testifying on behalf of the state, stated that Nakao then threw the cue on the floor. A witness, also testifying on behalf of the state, stated that he was sitting in an automobile parked in front of the pool hall, and that he saw Nakao striking at appellant with the cue.

Whether or not Nakao used the cue as a weapon of offense, it seems to be agreed that he finally discarded it and seized appellant, taking upon him a hold which, according to all canons of wrestling, including those of the Japanese, is a foul hold, being one which renders breathing extremely difficult for the victim. During the course of the struggle, appellant drew his revolver and fired three shots, all of which struck Nakao. Some of the witnesses testified that all three shots were fired in rapid succession. Other witnesses stated that three or four seconds elapsed between the firing of the first shot and the second, which all agree was closely followed by the third. The testimony was in dispute as to whether the shots were fired while the combatants were standing, or while they were falling, or from a prone position.

Nakao died within a very few minutes. One of the bullets fired by appellant entered Nakao's abdomen, and was found in his back, near the eighth and ninth ribs. Another bullet entered Nakao's back, about three inches below the seventh cervical vertebra, about one-half inch to the right of the spine; while the other bullet struck the spine, about three and one-half inches below the point of entry of the bullet last mentioned. Medical testimony was introduced by the state to the effect that the wound in the abdomen would not have caused death, at least not within the time that death ensued, but that either of the bullets which struck Nakao in the back would reasonably be expected to cause the hemorrhage which resulted in death. After

the shooting, appellant fled and secreted himself for a few days, after which he surrendered himself to the authorities.

Appellant contends that the trial court erred in four instructions to the jury, three of these instructions presenting the same question.

By instructions 6, 7 and 8, the trial court told the jury the law applicable to evidence in support of a plea of self-defense in a trial for murder. Appellant quotes from the opinion of this court in the case of *State v. Tyree,* 143 Wash. 313, 255 Pac. 382, the following:

"The test in these cases is not what someone else would believe, but as to what belief was entertained by the appellant himself; and the amount of force which he had a right to use in resisting an attack upon him was not the amount of force which the jury might say was reasonably necessary, but what under the circumstances appeared reasonably necessary to the appellant;"

and argues that the instructions of which he complains did not follow the rule therein laid down, but indicated to the jury that the acts of a defendant in self-defense must appear to the jury to have been reasonable in view of the situation confronting the accused at the time of the killing, rather than that such acts must at that time have appeared to the accused to have been reasonably necessary in order to protect his life or person.

Instruction 8, of which appellant complains, reads as follows:

"It is for you to determine whether or not defendant had reasonable ground to apprehend imminent death or great bodily harm or personal injury, and in deciding that question you should judge from defendant's standpoint at the time of the shooting, if there was any shooting; that is to say, you should take into consideration all the facts and circumstances bearing on the

question and surrounding defendant and existing at or prior to the time of the alleged shooting, as said facts and circumstances are disclosed by the testimony.''

Appellant argues that this instruction is particularly obnoxious to the criticism above referred to.

Of course, appellant's guilt or innocence depended upon whether or not he used more than necessary force in repelling Nakao's attack. Naturally, the fact that the bullets which undoubtedly caused death struck the victim in the back strongly influenced the jury in bringing in a verdict of guilty. As above stated, there was testimony in the record to the effect that several seconds elapsed between the first shot and the second. If the last two shots were fired after the deceased had turned from appellant, it was for the jury to determine whether or not appellant had used more than necessary force in defending himself.

By instructions 6 and 7, the court instructed the jury that one being in a place where he had a right to be need not retreat, but might repel force with force, and might use a deadly weapon in protecting himself; and that, under certain circumstances, a homicide committed in self-defense was justifiable. Instructions 6 and 7 are not subject to any just criticism.

Neither do we find error in instruction 8, considered in connection with the two preceding instructions and the one following. The instruction is possibly not so clear as it might be, but the jury cannot have been misled thereby to appellant's prejudice.

By instruction 9, the trial court again told the jury that, in determining the guilt or innocence of appellant, they should apply the law of excusable and justifiable homicide and of self-defense, and that if appellant

". . . then and there believed and had reasonable ground to believe that he was in imminent danger of death or great bodily harm or personal injury at the hands of said S. Nakao and was then and there lawfully defending himself against such apparent danger to his life or person, and in so doing shot and mortally wounded the said S. Nakao, then it will be your duty to acquit the defendant and find him not guilty. And in this connection you are further instructed that if you shall have a reasonable doubt as to whether or not the defendant was acting in lawful self defense at said time, and so shot and mortally wounded the said S. Nakao while so engaged in the lawful self defense of his life and person, it will be your duty to give the defendant the benefit of such doubt and find him not guilty.''

We find nothing in instruction 8 which can be held to be reversible error. The jury must have understood that they were to consider appellant's situation at the time of the shooting; and that, if he then entertained a reasonable belief that he was in imminent danger of death or injury, he was justified in using any necessary force in protecting himself.

Appellant argues that, by instruction 8, above quoted, and the other instructions, the jury were told that they should consider, not only the facts and circumstances which were apparent to the appellant, but all the facts as they were disclosed by the testimony. This criticism is not well founded. The jury were told that they should consider

". . . all the facts and circumstances bearing on the question and surrounding defendant and existing at and prior to the time of the alleged shooting, as said facts and circumstances are disclosed by the testimony.''

The jury, of course, were not permitted to guess concerning matters not disclosed by the testimony, and the portion of the instruction quoted simply tells them

to consider all matters surrounding defendant and existing at and prior to the shooting. One accused of murder and pleading self-defense cannot simply dogmatically announce that he was in fear of his life, and thereby require his acquittal. The jury must properly consider all the facts and circumstances in determining whether the measures taken by the accused were such as reasonably appeared necessary to him at the time.

In the case at bar, it appeared that the deceased was, in fact, not armed, but some of the witnesses stated that, as he advanced upon appellant, one of his hands was in an overcoat pocket, which, it was suggested, might have been ground for a belief on the part of appellant that the deceased was armed. We are satisfied, however, that the jury was told that, in this connection, they should consider the situation as it appeared to appellant prior to and at the time of the killing.

Instructions 6, 7 and 8 are free from prejudicial error.

 Instruction 14, given by the trial court, reads as follows:

"You are instructed that every person charged with the commission of a crime shall be presumed innocent until the contrary is proved by competent evidence beyond a reasonable doubt, and when an offense has been proved against him and there exists a reasonable doubt as to which of two degrees he is guilty, he shall be convicted of the lower."

Appellant complains of this instruction, alleging that, because appellant was charged with the crime of murder in the first degree, and because the instruction refers to "two degrees," the crime of manslaughter was eliminated from the jury's consideration, and that the jury may have been misled thereby. The trial court specifically instructed the jury that they could

find appellant guilty of murder in the first degree, or in the second degree, or guilty of manslaughter, and defined all three crimes in appropriate language. It may well be, as argued by respondent, that the record contains no testimony which would justify a verdict of guilty of the crime of manslaughter, but, in any event, that crime was defined to the jury, and a verdict of guilty thereof might have been returned. The use of the phrase "two degrees" in instruction 14 was somewhat inapt, but cannot have misled the jury, nor is it conceivable that any prejudice resulted to appellant from the instruction.

The errors assigned and argued by appellant are without merit, and the judgment appealed from is affirmed.

MILLARD, C. J., MAIN, TOLMAN, and GERAGHTY, JJ., concur.